The WILLIAMS COMPANIES, INC.,
etc., et al., Appellants,

v.

DIRECTOR OF REVENUE,
Respondent.

No. 72352.

Supreme Court of Missouri,
En Banc.

Nov. 20, 1990.

Rehearing Denied Dec. 18, 1990.

J. Kent Lowry, Jefferson City, Henry G. Will, Martin R. Wing, and Bret J. Masterson, Tulsa, Okl., for appellants.

William L. Webster, Atty. Gen., Richard Wieler, Asst. Atty. Gen., George Cox, Ronald J. Miller, Sp. Asst. Attys. Gen., Dept. of Revenue, Jefferson City, for respondent.

BILLINGS, Judge.

The principal issue in this case is whether The Williams Companies, Inc., and seven of its subsidiaries that did business in Missouri in 1982 through 1984[1] had the right to file a consolidated or combined Missouri income tax return for the years 1982 through 1984. Because construction of the revenue laws of the state is involved, this Court has exclusive appellate jurisdiction. *Mo. Const. art. V, § 3.* The Court affirms the order of the Administrative Hearing Commission but remands for consideration of an issue not ruled.

The Williams Companies, Inc., is a Delaware corporation, domiciled in Oklahoma and parent to numerous subsidiaries engaged in a variety of activities, including the transportation and sale of petroleum products and natural gas and the operation of common carrier pipeline systems. From 1982 through 1984, several of these subsidiaries were qualified to do business in Missouri, including the seven joined in this action. These subsidiaries filed separate Missouri corporate income tax returns for those years. The Williams Companies, Inc., together with roughly forty affiliated and subsidiary companies, filed consolidated federal income tax returns.

In 1987, appellants filed consolidated amended Missouri corporate income tax returns for 1982 through 1984, accompanied

---

**1.** These subsidiaries are Williams Natural Gas Company, Williams Pipeline Company, WRC of Missouri, Inc., Agrico Chemical Company, Willco, Inc., Willbros Terminal Company and WRC of Crown Center, Inc. For simplicity, these companies will be referred to as Missouri subsidiaries.

by claims for refunds totalling $2,702,546. The Department of Revenue found appellants were not qualified to file consolidated returns under § 143.431.3(1), RSMo 1986, and denied the refund claims. Appellants appealed to the Commission, claiming *inter alia,* that § 143.431.3(1) is unconstitutional. The Commission upheld the denial of the claims without reaching the constitutional issue, which it is without authority to decide. *State Tax Commission v. Administrative Hearing Commission,* 641 S.W.2d 69 (Mo. banc 1982). This petition for review followed.

Missouri law permits the filing of consolidated returns under the conditions specified in § 143.431.3(1):

> If an affiliated group of corporations files a consolidated income tax return for the taxable year for federal income tax purposes and fifty percent or more of its income is derived from sources within the state as determined in accordance with *section 143.451,* then it may elect to file a Missouri consolidated income tax return. The federal consolidated taxable income of the electing affiliated group for the taxable year shall be its federal taxable income.

When an affiliated group files a consolidated federal return, but not a consolidated Missouri return, each member corporation that files in Missouri determines its "federal taxable income" for Missouri tax purposes as if it had filed a separate federal income tax return. *Section 143.431.3(4).* A corporation's Missouri taxable income is determined based upon its "federal taxable income." *Section 143.431.1, RSMo 1986.*

Appellants argue that § 143.431.3(1) violates the Commerce Clause of the United States Constitution for two reasons: first, appellants and their affiliated companies constitute a unitary business, and only a consolidated return can accurately reflect the income that was earned in Missouri by the Missouri subsidiaries; second, the fifty percent "source of income" requirement of the statute discriminates against interstate commerce. Appellants also contend that the fifty percent "source of income" requirement violates the Uniformity and

Equal Protection Clauses of the Missouri Constitution. *Mo. Const. art. X, § 3; art. I, § 2.*

In *Mid–America Television v. State Tax Commission,* 652 S.W.2d 674, 680–681 (Mo. banc 1983), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1413, 79 L.Ed.2d 740 (1984), this Court held that § 143.431.3(1) does not violate the Uniformity and Equal Protection Clauses of the Missouri Constitution. That case is squarely on point and is dispositive of those issues. For reasons similar to those pointed out in *Mid–America,* 652 S.W.2d at 681, the Court concludes that § 143.431.3(1) does not violate the Commerce Clause of the United States Constitution.

As a general principle, a state may not tax value earned outside its borders. *ASARCO, Inc. v. Idaho State Tax Commission,* 458 U.S. 307, 315, 102 S.Ct. 3103, 3108, 73 L.Ed.2d 787 (1982). Missouri's taxation scheme apportions the income of an interstate business by applying a statutory formula to its "federal taxable income." §§ 143.431.1, 143.451, 32.200, RSMo 1986.

The "linchpin" of state apportionment of income of an interstate business for income tax purposes is the unitary-business principle. *Mobil Oil Corp. v. Commissioner of Taxes of Vermont,* 445 U.S. 425, 439–440, 100 S.Ct. 1223, 1232–1233, 63 L.Ed.2d 510 (1980). The unitary-business principle defines the scope of an interstate business's activities that are subject to apportionment in terms of the relationship of those activities that occur outside the taxing state with those that occur within the state. The definition of "unitary business" may not be so broad as to "permit nondomicilliary States to apportion and tax dividends where the business activities of the dividend payor have nothing to do with the activities of the recipient in the taxing State." *ASARCO,* 458 U.S. at 327, 102 S.Ct. at 3115. Generally, a state income tax provision will withstand constitutional challenge under the Commerce Clause when it "is applied to an activity with a substantial nexus with the taxing state, is fairly apportioned, does not discriminate

against interstate commerce, and is fairly related to the services provided by the State." *Mobil*, 445 U.S. at 443, 100 S.Ct. at 1234, quoting *Complete Auto Transit v. Brady*, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977).

The unitary-business concept is not monolithic. It may constitutionally encompass the lumping together of all income of a multicorporate conglomerate, or separate accounting respecting formal corporate lines. "There are variations on the theme, and any number of them are logically consistent with the underlying principles motivating the approach." *Container Corporation of America v. Franchise Tax Board*, 463 U.S. 159, 167, 103 S.Ct. 2933, 2941, 77 L.Ed.2d 545 (1983). "The Constitution imposes no single formula on the states." *Container Corp.*, 463 U.S. at 164, 103 S.Ct. at 2939.

Formula apportionment and separate accounting are both "imperfect proxies for an ideal which is not only difficult to achieve in practice, but also difficult to describe in theory." *Container Corp.*, 463 U.S. at 182, 103 S.Ct. at 2949. The Missouri scheme strikes a course between the two. *Section 143.431.3* is fashioned on the principle that formula apportionment of the income of a unitary affiliated group is more likely to be "fairly apportioned, nondiscriminatory, sufficiently connected with the taxpayer's state activities, and fairly related to state benefits provided the taxpayer," *Mobil*, 445 U.S. at 443, 100 S.Ct. at 1234, when the affiliated group derives the majority of its income from in-state sources. Conversely, when the unitary group's income derives primarily from sources outside the state, formula apportionment of the income of only those subsidiaries with direct relationships to the State yields a corpus of income more reasonably related to the group's activities within the state. *Mid–America*, 652 S.W.2d at 680–681. This presupposes some coincidence between the economic and legal structures of the consolidated business, which may not exist in every case. *See Container Corp.*, 463 U.S. at 167–68, 103 S.Ct. at 2941–42. However, the legal form in which a taxpayer clothes its business is one of its own choosing. The fact that a form that is well suited to some purposes does not also minimize Missouri taxes does not violate the Commerce Clause of the United States Constitution.

In contrast to *Boston Stock Exchange v. State Tax Commission*, 429 U.S. 318, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977) and *Westinghouse Electric Corporation v. Tully*, 466 U.S. 388, 104 S.Ct. 1856, 80 L.Ed.2d 388 (1984), cited by appellants, *§ 143.431.3* does not additionally tax appellants due to their interstate activities. Rather, the increased tax in this case results from the fact that the members of the group that generated losses and other tax savings are incorporated separately from the Missouri subsidiaries. Many of these subsidiaries did not file Missouri corporate income tax returns for the years in question. Disallowing consolidation of losses accrued outside Missouri with profits generated inside the State when there is no clear nexus between them (manifest by accruing under a single corporate franchise, or to a group deriving the majority of income from sources within the State) does not discriminate against interstate commerce.

■ Appellants argue in the alternative that the Multistate Tax Compact, *§ 32.200*, requires or permits a combined return. Appellants distinguish combined returns from consolidated returns in that a consolidated return is based solely on the degree of ownership of a common parent, *I.R.C. §§ 1501, 1504 (1990)*, whereas a combined return is based on the unitary nature of the affiliated group. To the extent that these concepts differ,[2] appellants' reading of *§ 32.200* would authorize the use of a different tax base than that specified in *§ 143.431, RSMo 1986*.[3] However, in

---

**2.** As when a unitary business not filing a federal consolidated return seeks to file a combined return. *See* J.R. Hellerstein, *1 State Taxation: Corporate Income and Franchise Taxes*, n. 527, *§ 8.12* at 462 (1983).

**3.** *Section 143.431.1, RSMo 1986,* provides that "The Missouri taxable income of a corporation taxable under *§§ 143.011 to 143.996* shall be so much of its *federal taxable income* for the tax-

*Goldberg v. State Tax Commission*, 639 S.W.2d 796, 799 (Mo.1982), this Court stated that the Multistate Tax Compact "was never intended by anyone to be a substantive taxation statute ... [but] was conceived as merely a procedural vehicle by which the states could resolve conflicts among themselves and aggrieved taxpayers." The Compact does not impose a tax but merely computes the tax imposed. *See Dow Chemical Company v. Director of Revenue*, 787 S.W.2d 276 (Mo. banc 1990). *A fortiori*, the Compact was not intended to authorize an alternative tax base. Appellants' claim must fail.

Appellants also contest the Commission's finding that certain interest income of Williams Natural Gas Company and capital gain income of Williams Pipeline Company was apportionable as "business income" under the Multistate Tax Compact. The Williams Natural Gas Company income consisted of proceeds from short term loans made by Williams Natural Gas Company to its parent companies. The Williams Pipeline Company income consisted of proceeds from the sale of preferred stock it held in the Wood River Pipeline Company, a joint venture between it and Koch Industries, Inc., a refinery operator in Minnesota.

The Compact defines "business income" as:

> ... income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations. *Section 32.200, art. IV 1(1), RSMo 1986.*

The Commission found that management of the funds that Williams Natural Gas Company loaned to its parent companies was not an integral part of its business. Appellants argue that because management of the funds was not an integral part of Williams Natural Gas' business, the interest thereon cannot be business income.

Business income includes, but is not limited to, income from "integral parts" of a taxpayer's business, but that is not the *sine qua non* of business income under the Compact. Rather, the test is whether the income is *"income from a unitary business." Dow Chemical*, 787 S.W.2d at 283 (Mo. banc 1990) (emphasis in original); *James v. International Telephone and Telegraph Corporation*, 654 S.W.2d 865, 868 (Mo. banc 1983). The underlying activity, not the form of the investment, determines the propriety of apportionability, and dividends, interest income and capital gains are treated in the same manner for purposes of the unitary business principle. *James v. I.T.T.*, 654 S.W.2d at 868; *ASARCO*, 458 U.S. at 330, 102 S.Ct. at 3116; *Mobil*, 445 U.S. at 440, 100 S.Ct. at 1233.

Appellants admit that Williams Natural Gas and the parent company payors were parts of a unitary business. The interest income was thus from a unitary business and may be apportioned under the Multistate Tax Compact. Appellants argue that this inconsistently apportions interest income to Missouri while denying apportionment of corresponding deductions to the borrowing members of the unitary business. Such deductions will, however, be reflected on the Missouri income tax returns of the borrowing members, if they file them.

Appellants do not admit that Williams Pipeline Company's interest in the Wood River Pipeline Company venture was a part of its unitary business. However, undisputed facts support the finding. The Commission found that Williams Pipeline Company built a pipeline from Mason City, Iowa, to Pine Bend and Cottage Grove, Minnesota, where Koch Industries, Inc., operated refineries. Koch Industries, Inc., however, refused to commit to using a pipeline that it did not control. Subsequently, Williams Pipeline Company and Koch Industries, Inc., formed Wood River Pipeline Company, which Koch Industries, Inc., controlled. Williams Pipeline Company transferred the pipeline and various rights-of-way to Wood River Pipeline Com-

able year ... as is derived from sources within    Missouri...." (emphasis added).

pany in exchange for all of Wood River's preferred stock and the right to control in the event that preferred dividends were not paid within three years. Williams Pipeline Company also provided various maintenance, repair, and construction services to Wood River Pipeline Company, albeit for compensation. The capital gain was realized when Williams Pipeline Company eventually sold its Wood River Pipeline Company stock to Koch Industries, Inc. Appellants do not dispute these facts, but argue that they are not sufficient to support the finding that Williams Pipeline Company's interest in Wood River Pipeline Company was a part of its unitary business.

In *Container Corp.*, 463 U.S. at 178, 103 S.Ct. at 2947, the Supreme Court stated that:

> When a corporation invests in a subsidiary that engages in the same line of work as itself, it becomes much more likely that one function of the investment is to make better use—either through economies of scale or through operational integration or sharing of expertise—of the parent's existing business-related resources.

Each of the benefits of the investment noted by the Court in *Container Corp.* is present in the case at bar. Similarly, the parent company in *Container Corp.*, 463 U.S. at 172, 103 S.Ct. at 2943, exercised little control over the day to day activities of the subsidiaries. Unlike *Philip Morris, Inc. v. Director of Revenue*, 760 S.W.2d 888, 891 (Mo. banc 1988), in which there was no exchange of expertise or information and no purchases or sales between the entities, Williams Pipeline Company contributed or sold substantial properties, services and expertise to Wood River Pipeline Company. Indeed, Wood River Pipeline Company owes its very existence to Williams Pipeline Company's involvement in the enterprise. The undisputed facts adequately support the finding that Williams Pipeline Company's interest in Wood River Pipeline Company was a part of Williams Pipeline Company's unitary business. The capital gain realized by Williams Pipeline Company on its sale of the Wood River Pipeline Company pre-

ferred shares therefore is apportionable under § 32.200. It is unnecessary to reach the question of whether certain other findings of fact that appellants dispute are supported by the record.

■ The final order of the Department of Revenue assessed a five percent addition to the tax due pursuant to *§ 143.751(1)*, RSMo 1986, which provides for such "If any part of a deficiency is due to negligence or intentional disregard of the rules and regulations (but without intent to defraud)." Appellants maintain that the deficiency assessed did not result from negligence or intentional disregard of the rules. Although appellants properly raised this issue before the Commission, the decision of the Commission fails to address it. Accordingly, the case is remanded to the Administrative Hearing Commission for consideration of this single issue alone. Except for that part of the order assessing the five percent addition, the order of the Administrative Hearing Commission is affirmed; the case is remanded for resolution of the addition to the deficiency pursuant to *§ 143.751(1)*.

All concur.