**GENERAL MOTORS CORPORATION**
and Subsidiaries, Appellants,

v.

**DIRECTOR OF REVENUE, Respondent.**

No. 80853.

Supreme Court of Missouri,
En Banc.

Dec. 22, 1998.

Thomas C. Walsh, Juan D. Keller, John P. Barrie, St. Louis, for appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for respondent.

ANN K. COVINGTON, Judge.

The principal issue in this case is whether General Motors Corporation and its subsidiaries have the right to file consolidated Missouri income tax returns for the years 1990, 1991, and 1992 pursuant to section 143.431.3(1), RSMo 1994.[1] Because construction of the revenue laws of the state is involved, this Court has exclusive appellate jurisdiction. *Mo. Const.* art. V, sec. 3. This Court reverses the decision of the Administrative Hearing Commission and remands for further proceedings, finding that section 143.431.3(1) violates the United States Constitution, article I, section 8, in that it discriminates against interstate commerce.

General Motors Corporation (GM) is a Delaware Corporation domiciled in Detroit, Michigan. GM is parent to numerous subsidiaries. GM and its subsidiaries constitute GM Group, which engages in manufacturing automobiles, trucks, component parts, and accessories. GM Group is also involved in the financing of those products and in insurance and business management systems. GM and some of its subsidiaries conducted business in Missouri from 1990 through 1992.

GM Group, as an affiliated group of corporations, filed federal consolidated income tax returns for 1990, 1991, and 1992. Approximately 300 subsidiaries were part of the affiliated group. GM Group also filed Missouri consolidated income tax returns in 1990, 1991, and 1992. GM Group conducted substantial business in Missouri from 1990

---

1. All statutory references are to RSMo 1994 unless otherwise noted.

through 1992. It had approximately $1.3 billion in property, $300 million in payroll, and $2.3 billion in gross receipts in Missouri for each of the three years. Because of its sizable commercial activities in other states, however, GM Group derived less than two percent of its income from sources within Missouri for each of the three years. On all three of its Missouri consolidated returns, GM Group reported zero tax liability. In 1990 and 1991, GM Group requested refunds in the amount of $3,651,703 and $1,172,400 respectively. GM Group did not claim a refund for 1992.

The Director of Revenue concluded that GM Group was not entitled to file consolidated returns for 1990, 1991, and 1992 because it did not derive at least fifty percent of its income from sources within Missouri pursuant to section 143.431.3(1). The director denied GM Group's refund claims for 1990 and 1991. The director further issued a notice of deficiency against GM in the amount of $12,-533,176 for 1992.

GM Group appealed to the Administrative Hearing Commission, (AHC), claiming that section 143.431.3(1) is unconstitutional because it violates the Commerce Clause, *U.S. Const.* art. I, sec. 8; the Due Process Clause, *U.S. Const.* amends. V and XIV; the Equal Protection Clause, *U.S. Const.* amends. V and XIV; the Equal Rights and Opportunities Clause, *Mo. Const.* art. I, sec. 2; and the Uniformity Clause, *Mo. Const.* art. X, sec. 3. The AHC upheld the director's determination that GM Group did not meet the statutory requirements to file a Missouri consolidated income tax return in that it did not derive fifty percent of its income from sources within Missouri. Because GM Group did not meet the requirements for filing consolidated returns, it was not entitled to refunds for 1990 and 1991. The AHC further held that GM was not liable for Missouri income tax for 1992. The AHC did not reach the constitutional questions because it is without authority to decide constitutional issues. *State Tax Comm'n v. Administrative Hearing Comm'n,* 641 S.W.2d 69, 75–76 (Mo. banc 1982). This petition for review followed.

Missouri law permits the filing of a consolidated income tax return by an affiliated group of corporations under the conditions specified in section 143.431.3(1), which provides in pertinent part:

> If an affiliated group of corporations files a consolidated income tax return for the taxable year for federal income tax purposes and fifty percent or more of its income is derived from sources within this state as determined in accordance with section 143.451, then it may elect to file a Missouri consolidated income tax return. . . .

 The essential purpose of allowing corporations to file a consolidated return is to permit affiliated corporations, which may be separately incorporated for various business reasons, to be treated as if they were one corporation. *Mid–America Television Co. v. State Tax Comm'n,* 652 S.W.2d 674, 680 (Mo. banc 1983), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1413, 79 L.Ed.2d 740 (1984). If an affiliated group files a consolidated Missouri return, the individual corporations within the group will not be required to file separate corporate income tax returns for the taxable year. Section 143.431.3(3). It is undisputed that filing a consolidated return allows an affiliated group to offset the gains of one or more of its companies with the losses of one or more of its companies, which may result in lower tax. In addition, filing a consolidated return is administratively more convenient than filing separate returns. It is also undisputed that the right to file a Missouri consolidated income tax return confers a valuable tax benefit to an affiliated group.

 GM Group contends, among other arguments, that section 143.431.3(1) violates the Commerce Clause of the United States Constitution because the threshold requirement that an affiliated group derive fifty percent of its income from sources within Missouri discriminates against interstate commerce. GM Group claims that it is being denied specific tax benefits because of GM Group's corporate form and the geographic location of the group's business activities. Under section 143.431.3(1), only business groups that perform the majority of their business activities in Missouri may elect to file a Missouri consolidated income tax re-

turn. GM Group's Commerce Clause claim is dispositive.

In recent years, the United States Supreme Court has addressed challenges under the Commerce Clause that provide guidance in resolving the present case. In *American Trucking Ass'n, Inc. v. Scheiner,* 483 U.S. 266, 286, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987), the Court held that two Pennsylvania statutes that imposed lump-sum annual taxes on the operation of trucks and truck tractors plainly discriminated against interstate commerce. Because Pennsylvania provided a reduction in registration fees designed to offset the lump-sum tax for vehicles registered in Pennsylvania, the practical effect of the statute was to tax only vehicles registered out of state. *Id.* at 277–78, 107 S.Ct. 2829. The Commerce Clause prohibits state taxes that favor in-state businesses over out-of-state businesses for no reason other than the geographic location of the business. *Id.* at 286, 107 S.Ct. 2829.

In *Camps Newfound/Owatonna, Inc. v. Town of Harrison,* 520 U.S. 564, 567–68, 117 S.Ct. 1590, 137 L.Ed.2d 852 (1997), the Court scrutinized a Maine statute providing a general exemption from property taxes for charitable institutions that primarily served Maine residents. Institutions that principally served non-residents of Maine qualified for a limited tax benefit, if any. *Id.* at 568, 117 S.Ct. 1590. The Court held that:

> It is not necessary to look beyond the text of this statute to determine that it discriminates against interstate commerce. The Maine law expressly distinguishes between entities that serve a principally interstate clientele and those that primarily serve an intrastate market, singling out camps that serve mostly in-staters for beneficial tax treatment, and penalizing those camps that do a principally interstate business. As a practical matter, the statute encourages affected entities to limit their out-of-state clientele, and penalizes the principally non-resident customers of businesses catering to a primarily interstate market.

*Id.* at 575–76, 117 S.Ct. 1590. The Court further stated that the fact that the tax discrimination resulted from depriving certain institutions of an available tax benefit rather than from imposing a specific tax penalty had no effect on the determination of whether the statute discriminated against interstate commerce. *Id.* at 578–79, 117 S.Ct. 1590.

In the preceding year in *Fulton Corp. v. Faulkner,* 516 U.S. 325, 327–28, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996), the Court examined a North Carolina statute that reduced the intangibles tax on the fair market value of corporate stock based upon the amount of business the corporation performed within the state. The tax scheme favored North Carolina corporations over out-of-state competitors because corporate stock was taxed only to the extent that the corporation conducted out-of-state business. *Id.* at 328, 116 S.Ct. 848. The Court held that "there is no doubt" that the intangibles tax facially discriminates against interstate commerce. *Id.* at 333, 116 S.Ct. 848. The Court further stated that state laws that discriminate against interstate commerce "on their face are 'virtually' *per se* invalid." [2] *Id.* at 331, 116 S.Ct. 848.

In *Associated Indust. of Missouri v. Lohman,* 511 U.S. 641, 647, 114 S.Ct. 1815, 128 L.Ed.2d 639 (1994), the Court held that Missouri's use tax statute, which applied only to articles of personal property purchased outside the state, discriminated against interstate commerce. A use tax that does not exceed the state's sales tax is valid under the Commerce Clause. *Id.* at 648, 114 S.Ct. 1815. Missouri's use tax scheme discriminated against interstate commerce because the use tax exceeded the local sales tax in certain locations. *Id.* at 649, 114 S.Ct. 1815. Out-of-state goods brought into these locations were subject to taxes higher than the tax on local goods. *Id.* The Court noted that a state may not tax a transaction more heavily when it crosses state lines than when the transaction occurs entirely within the state. *Id.* at 647, 114 S.Ct. 1815. Finally, the

---

**2.** In *Fulton Corp.,* the Court went on to discuss whether the facially discriminatory tax at issue survived Commerce Clause scrutiny under the compensatory tax defense. 516 U.S. at 331, 116 S.Ct. 848.

Court stated that the scope and magnitude of actual discrimination has no bearing on the determination of whether discrimination has occurred. *Id.* at 650, 114 S.Ct. 1815. A court need not inquire into the purpose or motivation behind a law to determine that it actually discriminates against interstate commerce. *Id.* at 653, 114 S.Ct. 1815.

Soon after its decision in *Associated Indust. of Missouri,* the Court invalidated a Massachusetts pricing order on dairy products. *West Lynn Creamery, Inc. v. Healy,* 512 U.S. 186, 194, 114 S.Ct. 2205, 129 L.Ed.2d 157 (1994). The pricing order was designed to enable Massachusetts dairy farmers to compete with out-of-state dairy producers. *Id.* All dairy dealers doing business in Massachusetts were required to pay a premium each month, which was then distributed to Massachusetts dairy farmers. *Id.* at 190–91, 114 S.Ct. 2205. The Court held that the premium payments were effectively a tax that discriminated against interstate commerce. *Id.* at 194, 114 S.Ct. 2205. The Court noted that the form by which a state erects barriers to commerce does not control the determination of whether the statute discriminates against interstate commerce. *Id.* at 201, 114 S.Ct. 2205. "The commerce clause forbids discrimination, whether forthright or ingenious. In each case it is our duty to determine whether the statute under attack, whatever its name may be, will in its practical operation work discrimination against interstate commerce." *Id.*

In *Kraft Gen. Foods, Inc. v. Iowa Dep't of Revenue,* 505 U.S. 71, 72–73, 112 S.Ct. 2365, 120 L.Ed.2d 59 (1992), the Court examined an Iowa statute that had the effect of taxing dividends received from foreign, but not domestic, subsidiaries. The Iowa Department of Revenue argued that the tax scheme was not unconstitutional because Kraft could have avoided the discriminatory tax by reorganizing its corporate structure. *Id.* at 77–78, 112 S.Ct. 2365. Iowa claimed that its tax scheme merely burdened a particular form of corporate organization, not foreign commerce. *Id.* The Court rejected these arguments, finding that the statute facially discriminated against foreign commerce. *Id.* at 82. The Court acknowledged that the Commerce Clause is

not violated when two categories of corporations receive differential tax treatment because of differences in the nature of their businesses rather than the location of their business activities. *Id.* at 78, 112 S.Ct. 2365. The Court found no basis, however, "for the different proposition that a tax that does discriminate against foreign commerce may be upheld if a taxpayer could avoid that discrimination by changing the domicile of the corporations through which it conducts its business." *Id.*

■■■■ A reading of the foregoing cases reflects the guiding principles for determining whether a statute discriminates against interstate commerce. State laws that facially discriminate against interstate commerce are virtually *per se* unconstitutional. *Camps Newfound/Owatonna,* 520 U.S. at 575, 117 S.Ct. 1590; *Fulton Corp.,* 516 U.S. at 331, 116 S.Ct. 848; *Associated Indust. of Missouri,* 511 U.S. at 647, 114 S.Ct. 1815. A state statute may not favor in-state businesses over out-of-state businesses for no reason other than the geographic location of the businesses. *American Trucking Ass'n,* 483 U.S. at 286, 107 S.Ct. 2829. The scope and magnitude of the discrimination has no bearing on determining whether the discrimination has occurred. *Associated Indust. of Missouri,* 511 U.S. at 650, 114 S.Ct. 1815. A court need not inquire into the purpose or motivation behind a law to determine that it actually discriminates against interstate commerce. *Id.* at 653, 114 S.Ct. 1815. Nor does it matter whether the form of the tax discrimination is a tax penalty or a tax benefit. *Camps Newfound/Owatonna,* 520 U.S. at 578–79, 117 S.Ct. 1590; *West Lynn Creamery,* 512 U.S. at 201, 114 S.Ct. 2205. Any arguments that attempt to justify a discriminatory restriction on interstate commerce must pass the strictest scrutiny. *Fulton Corp.,* 516 U.S. at 345, 116 S.Ct. 848. The fact that a corporation could avoid a discriminatory tax by changing either the domicile of its business or its organizational form does not render that statute constitutionally sound. *Kraft Gen. Foods,* 505 U.S. at 78, 82, 112 S.Ct. 2365.

■■■■ Applying these principles to the fifty-percent threshold requirement set forth in

section 143.431.3(1) dictates a determination that the requirement facially discriminates against interstate commerce. An affiliated group must derive the majority of its income from within the state of Missouri before it may elect to file a Missouri consolidated income tax return. The statute expressly distinguishes between affiliated groups that perform the majority of their business activities in Missouri and groups that perform the majority of their business activities out of state. *See Camps Newfound/Owatonna*, 520 U.S. at 575–76, 117 S.Ct. 1590 (finding that a similar statute that expressly distinguished between charities based on in-state or out-of-state activities facially discriminated against interstate commerce). The fifty-percent threshold requirement of section 143.431.3(1) also penalizes groups, such as GM Group, that conduct substantial amounts of business in Missouri but do not qualify for consolidated returns because they perform the majority of their business out of state. *Id.* at 576, 117 S.Ct. 1590. *See also Westinghouse Elec. Corp. v. Tully*, 466 U.S. 388, 407, 104 S.Ct. 1856, 80 L.Ed.2d 388 (1984) (holding that a franchise tax that similarly provided positive incentives for increased in-state activity facially discriminated against interstate commerce). The difference in tax treatment under section 143.431.3(1) results in part from the geographic location of the majority of the affiliated group's business activities. *See Amerada Hess Corp. v. Director, Division of Taxation*, 490 U.S. 66, 77, 109 S.Ct. 1617, 104 L.Ed.2d 58 (1989) (finding that tax did not discriminate against interstate commerce because tax did not discriminate based on geographic location); *American Trucking Ass'n*, 483 U.S. at 286, 107 S.Ct. 2829. In addition, section 143.431.3(1) impermissibly treats GM Group differently because of its corporate structure. *See Kraft Gen. Foods*, 505 U.S. at 82, 112 S.Ct. 2365 (rejecting Iowa's argument that a discriminatory statute was rendered constitutionally sound because the taxpayer could have avoided the discriminatory tax by changing its corporate form). Disparate tax treatment based on an affiliated group's geographic location and corporate structure constitutes an impermissible burden on interstate commerce.

This Court has not undertaken the foregoing analysis without being cognizant of the requirements to presume the validity of a statute unless it clearly contravenes a constitutional provision, *Mahoney v. Doerhoff Surgical Servs., Inc.*, 807 S.W.2d 503, 512 (Mo. banc 1991), to adopt any reasonable reading of the statute that will allow its validity, and to resolve any doubts in favor of constitutionality. *State ex rel. McClellan v. Godfrey*, 519 S.W.2d 4, 8 (Mo. 1975). The director offers several arguments in support of the constitutionality of section 143.431.3(1).

The director argues that this Court considered and rejected an argument identical to GM Group's argument that the fifty-percent threshold requirement of section 143.431.3(1) discriminates against interstate commerce in *Williams Co., Inc. v. Director of Revenue*, 799 S.W.2d 602, 604 (Mo. banc 1990), *cert. denied*, 501 U.S. 1260, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991). In *Williams*, this Court noted that section 143.431.3(1) was designed to tax income reasonably related to an affiliated group's in-state activities and does not result in additional tax liability for groups that do not meet the statute's requirements. *Id.* at 605. This Court held that section 143.431.3(1) did not discriminate against interstate commerce because the taxpayer could have avoided the adverse consequences of the statute by consolidating its business into a single corporation or by conducting a majority of its business in Missouri. *Id.*

*Williams* can no longer be cited as authority for the constitutionality of section 143.431.3(1). This Court's reasoning in *Williams* preceded the United States Supreme Court's decision in *Kraft Gen. Foods*. As noted above, the Court in *Kraft Gen. Foods* rejected the argument that a statute that facially discriminates against interstate commerce can be rendered constitutionally valid by showing that the taxpayer could have avoided the adverse consequences of the statute by reorganizing its business or changing its domicile. 505 U.S. at 78, 82, 112 S.Ct. 2365. After the *Kraft Gen. Foods* decision, the *Williams* analysis is no longer valid. The fifty-percent requirement of section

143.431.3(1) favors businesses that conduct the majority of their business in Missouri and penalizes primarily out-of-state businesses. Affiliated groups such as GM Group are deprived of a valuable tax benefit merely because of their corporate form and the geographic location of their business. *Williams Co. v. Director of Revenue,* 799 S.W.2d 602 (Mo. banc 1990), is overruled to the extent it holds that the fifty-percent threshold requirement of section 143.431.3(1) is constitutionally valid.

■■■ The director also claims that because section 143.431.3(1) neither imposes a tax nor grants a tax credit, the statute is constitutionally valid. Imposing a tax and granting a tax credit are not the exclusive means of discriminating against interstate commerce. The form by which a state erects barriers to commerce has no effect on the determination of whether discrimination exists. *West Lynn Creamery, Inc.,* 512 U.S. at 201, 114 S.Ct. 2205. The right to elect to file a consolidated return is a tax benefit. Based on its corporate form and its geographic location, GM Group is placed at a competitive disadvantage when it is denied the tax benefits that section 143.431.3(1) confers. This impermissibly discriminates against interstate commerce. *See Camps Newfound/Owatonna,* 520 U.S. at 578–79, 117 S.Ct. 1590.

The director places great emphasis on the fact that section 143.431.3(1) properly apportions Missouri taxable income. The director claims that because Missouri is constitutionally required to tax only the income that derives from business activities having a nexus with Missouri, the state may condition the right to file a consolidated return on whether the consolidated group has a nexus with the state.

■■■ A determination that a state's method of apportionment is constitutionally sound does not foreclose a determination of whether the state's tax scheme discriminates against interstate commerce. *Westinghouse Elec. Corp.,* 466 U.S. at 399, 104 S.Ct. 1856. "Fairly apportioned and nondiscriminatory are not synonymous terms." *Id.* Section 143.431.3(1) does far more than condition the right to file a consolidated return on whether the consolidated group has a nexus with Mis-

souri; it requires that a group conduct the majority of its business in Missouri before the group qualifies to file a consolidated return. Even if an affiliated group such as GM Group has substantial business activities with a nexus with Missouri, the group may not file a consolidated return unless it derives at least fifty percent of its total income from within the state. The fifty-percent threshold requirement of section 143.431.3(1) discriminates against interstate commerce in that it forecloses interstate commerce-neutral decisions and creates both an advantage for businesses that conduct the majority of their business in Missouri and a penalty for businesses that conduct the majority of their business outside Missouri. *Boston Stock Exch. v. State Tax Comm'n,* 429 U.S. 318, 331, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977).

Finally, the director argues that the fifty-percent threshold requirement in section 143.431.3(1) passes the internal consistency test. The internal consistency test involves a determination of whether a state tax would impermissibly interfere with free trade if every jurisdiction enacted similar legislation. *American Trucking Ass'n,* 483 U.S. at 284, 107 S.Ct. 2829. The director claims that section 143.431.3(1) passes the internal consistency test because even if a group is not allowed to file a consolidated return, each individual corporation within the group would still have its tax liability fairly apportioned.

The director's argument fails to acknowledge that the portion of section 143.431.3(1) that discriminates against interstate commerce is the fifty-percent threshold requirement rather than the system of apportionment. If every state required affiliated groups to conduct a majority of their business within the state before the groups could qualify to file consolidated income tax returns, there would be interference with free trade. Affiliated groups would be unable to offset profits collectively earned by member corporations with the collective losses of the member corporations. The groups would not have the benefit of decreased tax liability or the administrative benefit of filing a single consolidated income tax return. If all states applied the fifty-percent threshold requirement, business groups would be encouraged

to perform the majority of their business within a single state and would be penalized for engaging in free trade.

This Court holds that to the extent that section 143.431.3(1) requires an affiliated group to derive at least fifty percent of its income from sources within Missouri as a basis for filing a Missouri consolidated income tax return, section 143.431.3(1) violates the Commerce Clause of the United States Constitution, article I, section 8.

It remains to determine whether the discriminatory portion of section 143.431.3(1) may be severed from the remainder of the statute. All statutes should be upheld to the fullest extent possible. *Associated Indust. of Missouri v. Director of Revenue,* 918 S.W.2d 780, 784 (Mo. banc 1996). Statutes are presumptively severable. *Akin v. Director of Revenue,* 934 S.W.2d 295, 299 (Mo. banc 1996). Section 1.140 states in relevant part:

> The provisions of every statute are severable. If any provision of a statute is found ... to be unconstitutional, the remaining provisions of the statute are valid unless the court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependant upon, the void provision that it cannot be presumed that the legislature would have enacted the valid provisions without the void one....

The legislature is presumed to be familiar with section 1.140 and to have intended that this Court give effect to the portions of the statute that are constitutionally valid. *Akin,* 934 S.W.2d at 300–01.

The fifty-percent threshold requirement can be severed from section 143.431.3(1) without invalidating the remainder of the statute. As discussed above, section 143.431.3(1) contains two requirements that an affiliated group must meet before it qualifies to file a Missouri consolidated income tax return. The group must file a federal consolidated tax return and must derive at least fifty percent of its income from sources within Missouri. The two requirements enumerated in section 143.431.3(1) are not inseparably connected, nor are they so dependent upon each other that it cannot be presumed

that the legislature would not have enacted section 143.431.3(1) without the fifty-percent requirement. *Akin,* 934 S.W.2d at 301. Without the offending language, section 143.431.3(1) states in relevant part:

> If an affiliated group of corporations files a consolidated income tax return for the taxable year for federal income tax purposes ~~and fifty percent or more of its income is derived from sources within this state as determined in accordance with section 143.451~~, then it may elect to file a Missouri consolidated income tax return....

Once the invalid provision is severed from the statute, an affiliated group will be required to file a federal consolidated income tax return before the group will qualify to file a Missouri consolidated return.

The fifty-percent threshold requirement of section 143.431.3(1) violates the Commerce Clause of the United States Constitution, article I, section 8, in that it discriminates against interstate commerce. The fifty-percent requirement of section 143.431.3(1) is ordered severed. GM Group is authorized to file Missouri consolidated income tax returns for 1990, 1991, and 1992.

The decision is reversed and remanded for further proceedings in accordance with this opinion.

All concur.