Rel: April 10, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

_____

### CL-2025-0460

_____

**Ally Financial, Inc., and Ally Bank**

**v.**

**Alabama Department of Revenue**

**Appeal from Montgomery Circuit Court**
**(CV-24-900997)**

EDWARDS, Judge.

This appeal concerns whether Ally Financial, Inc. ("AFI"), and Ally

Bank ("the bank") (collectively referred to as "the taxpayers") met the

criteria to file Alabama Financial Institution Excise Tax ("FIET") returns

as a consolidated group in tax return years 2012 through 2020,[1] pursuant to Ala. Code 1975, § 40-16-3(c). The Alabama Department of Revenue ("the Department") determined that the taxpayers were not eligible to file as a consolidated group for those tax return years, resulting in additional tax liability owed by the bank for tax return years 2012 through 2018 and the denial of refunds for tax return years 2019 and 2020. The taxpayers timely appealed to the Alabama Tax Tribunal ("the tax tribunal"), which upheld the Department's determination that the taxpayers failed to meet the requirements necessary to file a consolidated return in the tax return years at issue. The taxpayers timely appealed the decision of the tax tribunal to the Montgomery Circuit Court ("the circuit court"). By consent of the parties, the circuit court's review was upon the administrative record and transcript developed before the tax tribunal. The circuit court affirmed the decision of the tax tribunal. The

---

[1]All references to "tax return years" are to the calendar year in which the FIET return was required to be filed pursuant to Ala. Code 1975, § 40-16-3(a). The FIET return for each tax return year reports the tax based on net income from the prior taxable year. For example, an FIET return for the 2012 tax return year reports the tax based on net income from the tax year ending December 31, 2011.

taxpayers now appeal the judgment of the circuit court. For the reasons set forth below, we affirm.

Alabama law requires every financial institution, as that term is defined in Ala. Code 1975, § 40-16-1, to file an FIET return. § 40-16-3(a). Section 40-16-3(b) permits "qualified corporate groups" to file a single consolidated FIET return on behalf of the entire consolidated group. Filing on a consolidated basis allows certain losses, if any, to be allocated across the consolidated group, effectively offsetting income of the members of the group. Allocating losses in a consolidated return allows a parent and its subsidiaries in the group to offset one member's losses against another member's profits, thereby reducing the group's overall taxable income and allowing the immediate use of net operating losses. To be included in a consolidated group for purposes of filing an FIET return, a financial institution must satisfy both the ownership test and the filing test set forth in § 40-16-3(c)(1) and (2).

In addition, financial institutions electing to file a consolidated FIET return are required to file certain forms with the Department. Relevant to this appeal, all members of a consolidated group must complete Form ET-1C, the common parent of the consolidated filing

group must file a Form ET-C, and each member participating in the consolidated filing must complete a pro forma Form ET-1 that is attached to Form ET-1C. Ala. Admin. Code (Dep't of Revenue), r. 810-9-1-.02(5)(a)2.

The relevant facts in this case appear to be largely undisputed.[2] The bank was formed under the laws of Utah and is registered to do business in Alabama. The bank is wholly owned by IB Finance Holding Company, LLC ("IBF"), a Delaware limited-liability company that is headquartered in Michigan. IBF, in turn, is wholly owned by AFI, a Delaware corporation that is also headquartered in Michigan. AFI and IBF are registered bank-holding companies under the Bank Holding Company Act of 1956. 12 U.S.C. § 1841. For tax return years 2012 through 2018, AFI filed consolidated FIET returns and completed Form ET-1C, listing the bank and AFI, among other entities not relevant to this appeal, as members of the consolidated group.[3] Despite the fact that

---

[2]The parties filed a joint stipulation of facts in the tax tribunal.

[3]Those returns included various disregarded entities that do business in Alabama that were not treated as separate entities of AFI for tax purposes.

the bank was wholly owned by IBF, IBF was not included in those FIET returns and was not included in AFI's Form ET-1C, Form ET-1, or any other form.[4]

In 2017, the Department conducted a review of the taxpayers' returns and made adjustments that are not relevant to this appeal. The taxpayers requested a hearing with the Department to contest the adjustments. During that hearing, the Department learned that IBF, and not AFI, was the sole owner of the bank. Based on that knowledge, the Department determined that AFI and the bank did not meet the requirements for filing as a consolidated group because they could not meet the ownership test and the filing test. Specifically, the Department determined that AFI was not the parent of the bank because it had no direct ownership of the bank; consequently, the ownership test set forth in § 40-16-3(c) was not met. Ultimately, the Department recalculated the tax liabilities of AFI and the bank on a separate-entity basis. As a result,

---

[4]For the 2017 and 2018 tax return years, AFI filed a consolidated return listing for the first time AFI, IBF, and the bank in the consolidated group. However, the returns did not include a Form ET-1 for IBF or any tax attributes of IBF in the affiliation schedule. It is undisputed that those forms were required to properly include IBF in the group.

the net operating losses of AFI were available to it only on a separate-entity basis, effectively preventing AFI from allocating a portion of its losses to offset the bank's taxable income. The adjustments resulted in additional tax being owed by the bank in each of the tax return years. Regarding tax return years 2012 through 2016, the resulting tax deficiencies were not assessed due to a statute-of-limitations issue resolved in favor of the bank; thus, no tax assessments were entered by the Department against the bank for those years. The Department issued preliminary assessments against the bank for tax return years 2017 and 2018 on October 13, 2020. Following a hearing on the taxpayers' appeal of the preliminary assessments, on February 24, 2021, the Department entered final assessments against the bank for taxes due in the amounts of $1,480,530 and $2,187,951, respectively, plus interest and penalties. As noted, the taxpayers timely appealed the Department's adjustments and final assessments to the tax tribunal.

On or about October 15, 2019, AFI filed a consolidated FIET return for the 2019 tax return year, listing AFI, IBF and the bank as members of the consolidated group. That return included, for the first time, a Form ET-1 for IBF. The return indicated that IBF had approximately $16.2

billion in assets and a comparatively small amount of loss, none of which was apportioned to Alabama. It appears that the parties agree that IBF had no nexus with Alabama during the relevant return years. AFI did not apportion any income or loss to IBF on the consolidated return. The return reported zero tax liability for the bank. The taxpayers then filed a petition for a refund, seeking the refund of a $1.2 million estimated tax payment that had been previously paid to the Department for the 2019 tax return year.

For the 2020 tax return year, AFI filed a consolidated FIET return similar to the 2019 return, reporting zero tax liability for the bank. The taxpayers then filed a petition for a refund, seeking the return of a $900,000 estimated tax payment that had been previously paid to the Department for the 2020 tax return year. Both refund requests were denied by operation of law. Ala. Code 1975, § 40-2A-7(c)(3).

The taxpayers timely appealed the Department's adjustments, the final assessments, and the denial of the requested refunds to the tax tribunal. Those appeals were consolidated, and a trial on the merits was conducted. On May 13, 2024, the tax tribunal entered a final order resolving all issues in the consolidated appeals in favor of the

Department. The tax tribunal found that the proposed consolidated group consisting of AFI and the bank in tax return years 2012 through 2018, and the proposed consolidated group consisting of the taxpayers and IBF in the tax return years 2019 and 2020, did not meet the requirements set forth in § 40-16-3 to file consolidated FIET returns. The taxpayers filed an application for a rehearing in the tax tribunal. The tax tribunal denied the taxpayers' application for a rehearing on May 29, 2024.[5]

In June 2024, the taxpayers appealed the tax tribunal's decision to the circuit court. The circuit court's review of the tax tribunal's decision was, by the parties' consent, limited to the record made in the tax tribunal; the burden rested on the taxpayers to demonstrate that the tax tribunal's decision was incorrect. Ala. Code 1975, § 40-2B-2(m)(4). The circuit court heard arguments of the parties at a hearing in February 2025. At that hearing, the taxpayers reasserted that the Department's

---

[5]The circuit court's judgment indicates that the taxpayers paid the final assessments, along with any accrued interest, after the tax tribunal's decision was final in order to perfect their appeal to the circuit court.

8

interpretation of § 40-16-3 was incorrect and argued, for the first time, that the Department's interpretation of § 40-16-3 was invalid under the Commerce Clause of the United States Constitution. U.S. Const., Art. I, § 8, cl. 3.

In May 2025, the circuit court entered a detailed judgment finding, as had the tax tribunal, that the proposed consolidated groups were invalid because the groups failed either the ownership test or the filing test for each year in the tax return years at issue.[6] The circuit court explained that the omission of IBF for the tax return years between 2012 and 2018 resulted in the proposed consolidated group failing the ownership test. The circuit court determined that, once IBF was included in the consolidated FIET returns for tax return years 2019 and 2020, the group failed the filing test because IBF was not a financial institution that was required to file an FIET return. The taxpayers timely appealed the circuit court's judgment.

---

[6]Although the circuit court's judgment did not expressly address the taxpayers' Commerce Clause argument, the circuit court's adoption of the Department's interpretation of Ala. Code 1975, § 40-16-3, and its affirmance of the tax tribunal's decision functions as an implicit denial of that argument.

The primary issue before this court is whether the circuit court erred in affirming the tax tribunal's decision that the proposed consolidated groups failed to satisfy the requirements in § 40-16-3(c). In addition, the taxpayers assert that the circuit court's interpretation of the filing test violates the Commerce Clause of the United States Constitution. U.S. Const., Art. I, § 8, cl. 3. Because the only questions presented on appeal are questions of law, and the facts are undisputed, our review is de novo. State Dep't of Revenue v. Garner, 812 So. 2d 380, 382 (Ala. Civ. App. 2001). We begin by observing that § 40-16-3(c) was amended by Ala. Acts 2019, Act No. 19-284; those amendments took effect on January 1, 2020. Therefore, we are bound to construe the language of § 40-16-3 as it existed at the time the relevant FIET returns were filed.[7]

The ownership test in effect at the time of the FIET returns at issue were filed provided that

"[i]ncludable financial institutions will be connected through stock ownership with a common parent corporation, which financial institutions are includable corporations if:

---

[7]The parties appear to agree that the preamendment version of ala. Code 1975, § 40-16-3(c), is the operative version of the statute for this appeal.

10

> "a. Stock possessing at least 80 percent of the voting power of all classes of stock and at least 80 percent of each class of the nonvoting stock of each of the includable corporations (except the common parent corporation) is owned <u>directly</u> by one or more of the other includable corporations; and
>
> "b. The common parent owns <u>directly</u> stock possessing at least 80 percent of the voting power of all classes of stock and at least 80 percent of each class of the nonvoting stock of at least one of the other includable corporations."

§ 40-16-3(c)(1) (emphasis added).

The filing test in effect during that same period provided that, "[i]n order to be eligible for this election, each member must be a financial institution as defined in [Ala. Code 1975, §] 40-16-1[,] and be required to file an excise tax return." § 40-16-3(c)(2). Section 40-16-1 defined a "financial institution" as

> "[a]ny person, firm, corporation and any legal entity whatsoever doing business in this state as a national banking association, bank, banking association, trust company, industrial or other loan company or building and loan association, and such term shall likewise include any other institution or person employing moneyed capital coming into competition with the business of national banks, and shall apply to such person or institution regardless of what business form and whether or not incorporated, whether of issue or not, and by whatsoever authority existing. The common parent corporation of a controlled group of corporations eligible to elect to file a consolidated excise tax

11

> return, in accordance with Section 40-16-3, shall be considered a financial institution if such parent corporation is a registered bank holding company as defined by the Bank Holding Company Act of 1956, as amended."

A plain language reading of the statute compels us to hold that, in order to have been a member of the consolidated FIET-return group, IBF must have been an includable financial institution and must have satisfied the ownership test and the filing test for each of the FIET tax return years at issue.

We first consider the 2012 through 2018 tax return years. It is clear from the record that IBF failed to complete a Form ET-1 for those tax return years. The taxpayers contend that IBF's failure to complete that form is irrelevant to these proceedings because, they say, IBF did not have any income or losses apportioned to Alabama for those years. However, r. 810-9-1-.02(5)(a)3(iii) requires "each member participating in the consolidation" to file a Form ET-1. Accordingly, regardless of whether IBF was eligible to be included in the consolidated group, the acknowledged failure to attach IBF's Form ET-1 to the consolidated FIET return resulted in IBF's exclusion from the consolidated group.

The circuit court concluded that the absence of IBF from the consolidated group prevented the proposed consolidated group from satisfying the ownership test because AFI did not <u>directly</u> own at least 80% of at least one other includable corporation and the bank. Specifically, the circuit court concluded that the only two affiliated members on the consolidated FIET returns were AFI and the bank and that AFI did not directly own the bank. The circuit court rejected the taxpayers' argument that the ownership test is met when each of the includable corporations in the group is owned by one or more of the other members of the group, concluding that such an interpretation would render the term "directly" to be either meaningless or equivalent to the term "indirectly." Recognizing, as the circuit court did, that "courts must presume that ... the legislature intended that each word of the statue have effect, and ... that the legislature did not include meaningless language or redundancies in the statute," <u>Surtees v. VFJ Ventures, Inc.</u>, 8 So. 3d 950, 975 (Ala. Civ. App. 2008), we conclude that the circuit court correctly determined that the proposed consolidated group was not eligible to file FIET returns on a consolidated basis for the 2012 through 2018 tax return years because the ownership test was not met.

13

Turning to the 2019 and 2020 tax return years, the record clearly indicates that IBF filed the appropriate forms to be included in the consolidated FIET return. To meet the filing test, each member of the consolidated group must have been both a "financial institution" and "required to file an [Alabama] excise tax return." § 40-16-3(c)(2). First, we must consider whether IBF is a financial institution. Initially, we note that the parties appear to agree that IBF does not do business in Alabama and, therefore, cannot qualify as a financial institution under the first sentence of § 40-16-1 ("the business test") (defining a "financial institution," in pertinent part, as "[a]ny person, firm, corporation and any legal entity whatsoever doing business in this state as a national banking association, bank, banking association, trust company, industrial or other loan company or building and loan association"). However, the taxpayers assert that IBF qualifies as a financial institution under the second sentence of § 40-16-1 ("the common-parent test") because, they say, it is a registered bank-holding company and is "the common parent of a group of corporations eligible to file a consolidated excise tax return (an eligible group composed of [IBF] and [the bank])." Taxpayers' brief, p. 24. The Department argues that IBF is not a financial institution

because IBF would not be "the common parent" of the proposed consolidated group of AFI, IBF, and the bank; in other words, because AFI wholly owns IBF and IBF wholly owns the bank, IBF cannot be the common parent of the group including AFI and the bank. The taxpayers appear to acknowledge that IBF is not the common parent of the proposed consolidated group.

We observe that the taxpayers' interpretation of the common-parent test would permit <u>any</u> registered bank-holding company that owns at least 80% percent of the voting and nonvoting shares of an entity satisfying the business test to be a common parent, and thus a financial institution, for the purpose of filing a consolidated FIET return, regardless of that parent corporation's connection to Alabama. Such an interpretation of the common-parent test would effectively render the filing test obsolete. We emphasize that "'"[t]here is a presumption that every word, sentence, or provision [of a statute] was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used."'" <u>Richardson v. Stanford Props., LLC</u>, 897 So. 2d 1052, 1058 (Ala. 2004) (quoting <u>Sheffield v. State</u>, 708 So. 2d 899, 909 (Ala. Crim. App.

1997), quoting in turn 82 C.J.S. Statutes § 316, at 551-52 (1953)). The plain language of the ownership test and the common-parent test clearly contemplate a single common parent for a given consolidated group. The ownership test provides, in part, that each includable corporation, "except for the common parent corporation," must have 80% of its voting and nonvoting stock owned by one or more of the other includable corporations. § 40-16-3(c)(1)(a) (emphasis added). The common-parent test similarly refers to "[t]he common parent corporation" of a group of corporations that are eligible to file a consolidated FIET return. § 40-16-1. Thus, it appears that the legislature contemplated that the term "common parent" applies to only the common parent of the proposed consolidated group at issue, which, in this case, is AFI. It follows that, because IBF is not the common parent of the consolidated return group and does not do business in Alabama as a bank or similar entity, it does not qualify as a financial institution and is not required to file an FIET return. Accordingly, we agree with the circuit court that the proposed consolidated group of AFI, IBF, and the bank failed the filing test for the 2019 and 2020 tax return years. Therefore, we affirm the circuit court's judgment as to those tax return years.

The taxpayers next contend that the circuit court's interpretation of the filing test expressly favors in-state business operations and, thus, they say, violates the Commerce Clause of the United States Constitution.

> "The Commerce Clause of the United States Constitution states that '[t]he Congress shall have power ... [t]o regulate commerce ... among the several states....' U.S. Const., Art. I, § 8, cl. 3. Notably absent from this text is any explicit prohibition on state regulation of interstate commercial activity. Nonetheless, the United States Supreme Court, in what is referred to as its 'dormant' or 'negative' Commerce Clause jurisprudence, has concluded that such a constitutional principle exists. 'The negative or dormant implication of the Commerce Clause prohibits state taxation ... or regulation ... that discriminates against or unduly burdens interstate commerce and thereby "imped[es] free private trade in the national marketplace."' General Motors Corp. v. Tracy, 519 U.S. 278, 287, 117 S. Ct. 811, 136 L. Ed. 2d 761 (1997) (quoting Reeves, Inc. v. Stake, 447 U.S. 429, 437, 100 S. Ct. 2271, 65 L. Ed. 2d 244 (1980))."

Ex parte Hoover, Inc., 956 So. 2d 1149, 1150 (Ala. 2006). We note that appellate courts presume that a properly enacted statute is constitutional and, when there are two possible interpretations of a statute, will employ the interpretation that renders the statute constitutional. Surtees, 8 So. 3d at 976-77. However, "[w]e note that because we are concerned with construing statutory provisions, we

17

review this case without attaching any presumption of correctness to the actions of the trial court." Pilgrim v. Gregory, 594 So. 2d 114, 120 (Ala. Civ. App. 1991) (opinion on application for rehearing). See also IEC Arab Alabama, Inc. v. City of Arab, 7 So. 3d 370, 373 (Ala. Civ. App. 2008); Monroe v. Valhalla Cemetery Co., 749 So. 2d 470, 471-72 (Ala. Civ. App. 1999).

In Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 279 (1977), the United States Supreme Court provided that a state tax on interstate commerce will be sustained so long as it "[(1)] applie[s] to an activity with a substantial nexus with the taxing State, [(2)] is fairly apportioned, [(3)] does not discriminate against interstate commerce, and [(4)] is fairly related to the services [the State provides]." A tax may discriminate against interstate commerce by being facially discriminatory, having a discriminatory intent, or having the effect of unduly burdening interstate commerce. Amerada Hess Corp. v. Director, Div. of Tax'n, New Jersey Dep't of Treasury, 490 U.S. 66, 75 (1989).

Initially, we note that the taxpayers appear to argue, at least in part, that the filing test is facially discriminatory; that is, the plain text of the filing test, they say, expressly discriminates against out-of-state

18

commerce. Healy v. Beer Inst., Inc., 491 U.S. 324, 341 (1989) (holding that a Connecticut statute that "[b]y its plain terms ... applie[d] solely to interstate brewers or shippers of beer, that is, either Connecticut brewers who sell both in Connecticut and in at least one border State or out-of-state shippers who sell both in Connecticut and in at least one border State" facially discriminated against interstate commerce); Amerada Hess, 490 U.S. at 67 (concluding that an add-back provision in the state's taxing statutes was not facially discriminatory because there was no explicit discriminatory design to the tax); AT & T Corp. v. Surtees, 953 So. 2d 1240, 1245 (Ala. Civ. App. 2006) (explaining that, in order to determine whether a statute is facially discriminatory, "the text of the statute must treat in-state economic interests differently from out-of-state economic interests in such a way as to benefit the in-state economic interests and burden the out-of-state economic interests"); see Camps Newfound/Owatonna, Inc. v. Town of Harrison, 520 U.S. 564 (1997) (stating that a facially discriminatory law textually identifies out-of-state person or entities and grants them unfavorable treatment). Certainly, a statute that expressly favors in-state commerce over out-of-state commerce would be facially discriminatory and a per se violation of the

19

Commerce Clause. <u>Fulton Corp. v. Faulkner</u>, 516 U.S. 325, 331 (1996). However, unlike the statute at issue in <u>Boston Stock Exchange v. State Tax Commission</u>, 429 U.S. 318 (1977), the case the taxpayers primarily rely on before this court, the filing test does not expressly provide for different treatment for in-state commerce and out-of-state commerce. The filing test requirement that an entity be a financial institution that is required to file an FIET return does not, on its face, discriminate against interstate commerce. Thus, we disagree that the circuit court's interpretation of the filing test is per se invalid.

The taxpayers also assert that the circuit court's interpretation of the filing test discriminates against interstate commerce by preventing out-of-state intermediate bank-holding companies that do not conduct business in Alabama, such as IBF, from qualifying as financial institutions for the purpose of being a member of a consolidated FIET-return group. The taxpayers cite <u>General Motors Corp. v. Director of Revenue</u>, 981 S.W.2d 561 (Mo. 1998), in support of their argument. In that case, the Missouri Supreme Court overturned a state statute that, on its face, conditioned consolidated filing privileges on the group's deriving 50% or more of its income from Missouri sources, holding that

"[d]isparate tax treatment based on an affiliated group's <u>geographic</u> <u>location</u> and corporate structure constitutes an impermissible burden on interstate commerce." <u>Id.</u> at 566 (emphasis added). The taxpayers' argument is misplaced. As the Department correctly asserts in its brief, IBF's disqualification from the consolidated group is unrelated to any actual disparate tax treatment based on geographic location, i.e., its disqualification from the group was not solely because IBF was not conducting business in Alabama. IBF was disqualified from the group consisting of AFI, IBF, and the bank in tax return years 2019 and 2020 because it was not "the common parent," and it would be disqualified regardless of whether it conducted business in Alabama.

Additionally, as the Department correctly notes in its brief on appeal, the circuit court's interpretation of the filing test would result in a similarly situated in-state registered bank-holding company failing the filing test. An in-state registered bank-holding company that does not conduct business in Alabama as a bank or similar entity or is not the common parent of the consolidated group would not qualify as a financial institution under the business test or the common-parent test of § 40-16-1. Thus, a similarly situated in-state registered bank-holding company

21

would fail to qualify as a financial institution and, accordingly, would fail the filing test.

We also note that the taxpayers assert that, under the Department's and the circuit court's interpretation of the filing test, the privilege of filing a consolidated FIET return would be available only to those groups in which each financial institution in the group directly conducts business in Alabama. This is incorrect. The definition of "financial institution" in § 40-16-1 allows entities to qualify as a financial institution without conducting business in Alabama; namely, the entity must be the common parent of a qualified consolidated group and be a registered bank-holding company. Our holding that IBF is not a common parent for the purpose of qualifying as a financial institution in a consolidated FIET-return group comprising AFI, IBF, and the bank should not be read as a requirement that all financial institutions seeking to file a consolidated FIET return must do business in Alabama.

Having determined that the circuit court did not err in finding that the taxpayers failed to satisfy the consolidated FIET-return filing requirements in § 40-16-3 and that the circuit court's interpretation of

22

the filing test did not violate the Commerce Clause, we affirm the circuit court's judgment.[8]

AFFIRMED.

Moore, P.J., and Hanson, Fridy, and Bowden, JJ., concur.

---

[8]Having affirmed the circuit court's judgment concerning the FIET-return group, we need not reach the taxpayers' argument concerning the adjustment and allocation of their net operation losses.